# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| JUDITH MICHAELIAN, <br><br> Plaintiff, <br><br> vs. <br><br> LAWSUIT FINANCIAL, INC., MARK M. BELLO, <br><br> Defendants. | 2:17-CV-13321-TGB <br><br> ORDER |

## ORDER DENYING PLAINTIFFS' MOTION TO STRIKE (ECF No. 67) AND CROSS-MOTIONS FOR RECONSIDERATION (ECF Nos. 68, 76)

### I. Introduction

The facts of this case were set out in laborious detail in the Court's previous Order issued on March 20, 2019 addressing the parties' summary judgment motions. ECF No. 73. To the extent they are relevant, those facts are adopted here. For now, it is enough to recap that Plaintiff Judith Michaelian sued Defendants Lawsuit Financial, Inc. and its owner Mark Bello because her deceased husband had invested hundreds of thousands of dollars with Bello and his company, and Mrs. Michaelian wanted the money back.

Earlier in the litigation, Plaintiff twice requested the Court to appoint a receiver to take over the assets of the defendant company, first on April 3, 2018, and again on August 6, 2018. ECF Nos. 27, 50. The Court found the record before it insufficient to determine whether appointing a receiver would be appropriate. For that reason, on October 30, 2018, the Court appointed a special master/examiner to conduct a forensic accounting of Defendant Lawsuit Financial's finances and report on whether it had the capacity to pay Plaintiff back. ECF No. 62. On December 21, 2018, the Court filed the special master/examiner's report under seal and directed the parties to file any objections to unsealing the report within fourteen days. ECF No. 65. Receiving no objections, on January 10, 2019 the Court unsealed the report and denied Plaintiffs' Motion to Appoint a Receiver. ECF No. 66. Plaintiff now moves to strike the report of the special master/examiner, ECF No. 67, and further to reconsider the Court's order denying appointment of a receiver, ECF No. 68. For the reasons set forth below, it is **ORDERED** that both motions are **DENIED**.

Also before the Court is Defendants' motion asking for partial reconsideration of the Court's March 20, 2019 summary judgment Order on the ground that the Court failed to consider Defendant's affirmative defense that Count X of Plaintiffs' Complaint was brought outside the one-year statute of limitations for sale of an unregistered security. ECF No. 76. Defendant's Motion is also **DENIED.**

## II. Legal Standards

Plaintiffs cite no legal standard that the Court should apply in considering their Motion to Strike. Instead, Plaintiffs raise several arguments related to the veracity of the report itself: (1) the report relies on flawed or false data; (2) the report is incomplete; and therefore (3) the report is not useful to the Court. Rather than filing these objections during the fourteen-day period the Court established to consider such arguments before adding the report to the public record, or during the twenty-one-day period for objections to such reports set forth in Fed. R. Civ. P. 53(f)(2), Plaintiffs did not interpose their objections until after the Court had considered the report in making its decision not to appoint a receiver. In any event, Plaintiffs' tardy objections do not warrant striking the report of the special master/examiner. Fed. R. Civ. P. 53(f)(3) indicates that "[t]he court must decide de novo all objections to findings of fact made or recommended by a master."

With respect to the Cross-Motions for Reconsideration, the Court may grant a motion for reconsideration if the movant satisfactorily shows: (1) the existence of a palpable defect that misled the parties and the Court; and (2) the correction of such defect would result in a different disposition of the case. E.D. Mich. L.R. 7.1(h)(3). A defect is palpable if it is "obvious, clear, unmistakable, manifest, or plain." *Olson v. Home Depot*, 321 F. Supp. 2d 872, 874 (E.D. Mich. 2004).

### III. Analysis

*a. Plaintiffs' Motion to Strike the Report of the Special Master/Examiner*

On October 15, 2018, the Court heard oral argument on Plaintiff's Second Motion to Appoint a Receiver. At the hearing, the Court indicated that the pleadings and exhibits pertaining to the request to appoint a receiver raised sufficient questions about Lawsuit Financial's solvency to justify the appointment of a special master/examiner to investigate the financial condition of Defendant Lawsuit Financial, Inc. The Court directed parties to submit a proposed stipulated order that specified the duties of the special master/examiner. The parties submitted this proposed stipulated order on October 19, 2018. The stipulation indicated that the special master/examiner should investigate the following:

- The current financial health and stability of LFC, including an assessment of its assets and short and long-term debt obligations, and its long-term sustainability and viability, both assuming LFC receives no additional capital and assuming that LFC receives capital injections at various levels during the next 12-24 months;

- The ability of LFC to fund the payment of a settlement or judgment in the amount of approximately $800,000 (less the $266,000 LFC has escrowed or repaid to date), with monthly payments over a 24-36 month time frame, while continuing to operate under its current business model of funding cases; and,

- A determination of the largest regular monthly payment that LFC could consistently make while still continuing operations.

In addition, the Order required Defendants to "promptly comply with any and all requests for documents and records" by the special master/examiner and permitted the special master/examiner to contact the attorneys and parties to the case. ECF No. 62, PageID.6097. The Order included the name and address of the special master/examiner.

In appointing the special master/examiner, the Court acted pursuant to Fed. R. Civ. P. 53(a)(1)(A) and (C), which authorizes the appointment of a special master to "perform duties consented to by the parties," or "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." In addition, the Court has inherent power to appoint "persons unconnected with the court to aid judges in the performance of specific judicial duties, as they may arise in the progress of a cause." *In re Peterson*, 253 U.S. 300, 312 (1920)[1]; *cf. Curtis v. Brunsting*, No. 4:12-CV-592, 2013 WL 12100751 (S.D. Tex. Apr. 19, 2013) (appointing an accountant to investigate financial records of a trust); *cf. Festival Fun Parks, LLC v. Mountain Creek Resort, Inc.*, No. 12-410 (FSH), 2015 WL 758467 (D.N.J. Feb. 23, 2015) (entertaining the defendant's Motion for Instructions to Accountant after the court appointed an accountant agreed upon by the parties).

---

[1] *In re Peterson* predates the adoption of the Federal Rules of Civil Procedure, but the following district court cases postdate it, suggesting that the Court's inherent power in this arena coexists with its codified, Rules-based power.

The special master completed the report on Defendant's solvency and submitted it to the Court. On December 21, 2018, the Court issued an Order filing the special master/examiner's report under seal and directing the parties to show cause within fourteen days why the report should not be unsealed. ECF No. 65 PageID.6291. Neither party submitted objections within fourteen days. In addition, Fed. R. Civ. P. 53(f)(2) provides that "[a] party may file objections to—or a motion to adopt or modify—the master's order, report, or recommendations no later than 21 days after a copy is served, unless the court sets a different time." Neither party objected to the report within twenty-one days of being served with it.

Nonetheless, Plaintiffs' Reply brought to the Court's attention that the procedure set forth for objecting to the special master/examiner's report was unclear because it only referenced objections to *unsealing* the report. Therefore, while Plaintiffs did not timely submit objections to the Court's adoption of the special master/examiner's report under Rule 53(f)(2), the Court will construe Plaintiffs' Motion to Strike as a pleading that also timely states objections to the Court's reliance on the report. The Court has carefully reviewed Plaintiffs' arguments and, for the reasons set forth below, the Court **DENIES** Plaintiffs' Motion to Strike, **OVERRULES** Plaintiffs' objections to adoption of the report of the special master/examiner, and **ADOPTS** the December 21, 2018 Report of the

Special Master/Examiner for the limited purpose of deciding Plaintiffs' Motion to Appoint Receiver.

Plaintiffs raise two objections to the report of the special master/examiner: (1) the report is biased because the special master/examiner did not contact plaintiffs' counsel and relied only on data generated by Defendant Bello; and (2) the Court asked the special master/examiner to investigate the largest monthly payment Defendant LFC could pay while continuing operations, but the special master did not do so. The Court overrules these objections because the special master fulfilled the assigned duties as set forth in the Court's order of appointment.

Plaintiffs' first objection does not warrant rejecting the special master's report. The Court's Order appointing the special master listed his name and contact information and authorized contact between the parties and the special master. Plaintiff and her counsel were free to reach out to the special master at any time, either to offer information and records of its own, or to express concerns about the data Defendant Bello provided. In addition, the special master was fully aware of the circumstances leading to his appointment, which involved conflicting accounts of the veracity of Defendants' financial records, and the Court's expressed need to have a trustworthy accounting of Defendants' financial condition. He had access to the briefs each party filed on the Motion to

Appoint a Receiver, as well as to the entire public docket of filings in this case.

The Order appointing the special master did not require the special master to contact Plaintiff, it merely permitted him to do so. Nothing prohibited Plaintiff from taking the initiative and communicating her specific concerns about records generated by the Defendants. And beyond that, the specific factual contentions in the Motion to Strike reveal the proof problems Plaintiffs face when attempting to satisfy their burden in a Motion to Appoint a Receiver. Defendant Bello is the manager and recordkeeper for Defendant Lawsuit Financial. It follows that Bello would provide Lawsuit Financial's business records to the special master as the primary resource for anyone examining the financial health of Lawsuit Financial. And even if Bello had poor recordkeeping practices, that shortcoming on its own does not entitle a party suing a corporation to a receiver during the litigation.

The language of the order stipulating the special master/examiner's duties also easily disposes of several other objections of Plaintiffs. The stipulation asks the special master to consider an obligation to Plaintiffs in the amount of $800,000. Plaintiffs now object that the special master considered a repayment amount of $800,000, rather than that amount plus the interest to which Plaintiffs are entitled. But Plaintiffs' objection that the report does not state that Defendants actually owe $1,118,580 is without merit because the parties expressly agreed that the special

master should assume Defendants owed Plaintiffs $800,000. Similarly, Plaintiffs stipulated to have the special master consider the amount Defendants could pay over a period of 24-36 months. Plaintiffs' objection that they never assented to take payment over time is irrelevant; the stipulation to which they agreed set out a possible time-frame for repayment to delimit the boundaries of the special master's inquiry—it did not suggest that Plaintiffs had agreed to accept payment over that period. The special master/examiner simply followed instructions set forth in the stipulation.

Plaintiffs' second objection is that the special master stated that he could not conclude with any certainty the maximum amount of money Defendants could pay Plaintiffs. As noted above, this is an area of inquiry that the Court directed the special master to investigate pursuant to the parties' stipulation. Although Plaintiffs say that the "Special Examiner explicitly declined to investigate this point," ECF No. 67 PageID.6334, this is incorrect. The special master investigated this question but concluded that he could not state with any accuracy the maximum amount Defendants could pay per month because Defendants' cash flow is irregular. This conclusion is sufficient to fulfill the special master's duty.

Finding Plaintiffs' objections to the report of the special master unpersuasive, the Court declines to strike the report. Plaintiffs' Motion to Strike (ECF No. 67) is **DENIED.**

### b. *Plaintiffs' Motion to Reconsider Order Denying Appointment of a Receiver*

On January 10, 2019, the Court unsealed the report of the special master/examiner concluding that Defendant Lawsuit Financial was solvent. Relying in part on the report, the Court denied Plaintiff's Motion to Appoint a Receiver. ECF No. 66. While the report of the special master/examiner was not the only material of record upon which the Court relied, the report's conclusion regarding Lawsuit Financial's solvency did provide an additional basis for denying Plaintiffs' motion.

The Court has already explained its reasons for denying Plaintiffs' Motion to Strike the Report of the Special Master/Examiner and overruling the objections its adoption. The Court briefly notes that reliance on the report did not constitute a palpable defect for the reasons stated above. In addition, the report was not the sole piece of evidence the Court reviewed in denying Plaintiffs' Motion to Appoint a Receiver. The Court also explicitly considered Defendants' ability to escrow a significant amount of money pending the completion of the litigation. And Plaintiffs' proof problems, discussed in the subsection above, also weighed against appointing a receiver to take control of Lawsuit Financial. While meticulous recordkeeping would have been helpful in this case, its absence does not entitle Plaintiffs to a receiver.

### c. Defendants' Motion to Reconsider Order Granting Summary Judgment to Plaintiff on Count X

In support of their Motion for Reconsideration of the Court's grant of summary judgment to Plaintiff on Count X, Defendants point to footnote 17 of their Response. In this footnote, Defendants argue that Plaintiffs' claim in Count X, which alleges sale of an unregistered security, falls outside the statute of limitations prescribed in the Securities Act of 1933, 15 U.S.C. § 77m.[2] Although the Court previously rejected this argument in ruling from the bench on Plaintiffs' Motion to File First Amended Complaint, *see* October 15, 2018 Docket Entry, the Court will address Defendants' argument again here.

On October 15, 2018, the Court heard oral argument on Plaintiff's Motion to File First Amended Complaint. Defendant opposed the motion on the ground that amendment would be futile as to the securities violation claims (including Count X), because the claims of the party Plaintiff was seeking to add—the Estate of Marshall Michaelian—fell outside the statute of limitations. After the hearing, the Court ruled from the bench, granting Plaintiff's Motion to File Amended Complaint. The Court found that amendment would not be futile as to Count X because the addition of the new party related back to the date of initial filing of the Complaint. To make this finding, the Court relied on *Asher v. Unarco*,

---

[2] The Sixth Circuit has opined that "dropping a footnote in response to [a summary judgment] motion" is "the summary judgment equivalent of 'hid[ing] elephants in mouseholes.'" *Sumpter v. Wayne County*, 868 F.3d 473, 489 (6th Cir. 2017) (quoting *Whitman v. Am. Trucking Assns., Inc.*, 531 U.S. 457, 468 (2001)).

596 F.3d 313, 319 (6th Cir. 2010), which states that when plaintiffs "seek to correct a misnomer or misdescription of a proper party plaintiff already in court," or "change the capacity in which they sue[]; or to substitute or add as plaintiffs the real party in interest," the addition of the new plaintiff will usually relate back to the date of initial filing. (quoting *Hill v. Shelander*, 924 F.2d 1370, 1376 (7th Cir. 1991)).

Defendants argue again, as they have several times, that because Plaintiff Judith Michaelian believes that she is the real party in interest, her attempt to add the Estate as a plaintiff does not fall under the *Asher* rule. But this ignores the fact that Defendants themselves, from the beginning of this litigation, have maintained that the *Estate* is the real party in interest. Defendants cannot have it both ways. For these reasons, the addition of the Estate of Marshall Michaelian as a plaintiff in this litigation plainly relates back to the date of initial filing of the Complaint.

Under these circumstances, Defendants have not shown that the Court's omission of any discussion of footnote 17 from its Order of March 20, 2019 was a palpable defect. Plaintiff filed her Complaint on October 10, 2017. Defendants sold unregistered securities to Plaintiffs in a series of transactions between March 2015 and July 2017. Therefore, some of the sales of an unregistered security took place within one year of the filing of the Complaint. Defendants' statute of limitations argument

relates only to damage calculation, a matter which will later be determined.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' Motion to Strike (ECF No. 67) and the pending Cross-Motions for Reconsideration (ECF Nos. 68, 76) are **DENIED**.

**SO ORDERED.**

Dated: April 19, 2019

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE